NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2886-22

KEITH HACKER,

      Plaintiff-Respondent,

v.

CARLOS JAIME-VALDEZ,

      Defendant-Appellant,

and

MICHELE DONATO and
PROGRESSIVE INSURANCE
COMPANY,

      Defendants.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 13, 2025**
>
> **APPELLATE DIVISION**

Argued December 16, 2024 – Decided June 13, 2025

Before Judges Gummer, Berdote Byrne, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-3112-19.

Robert P. Stein and Daniel J. Pomeroy argued the cause for appellant (Goldberg, Miller and Rubin, PC, and Pomeroy Heller & Ley, LLC, attorneys; Thomas J. Giardina, on the briefs).

John D. Borbi argued the cause for respondent (Borbi, Clancy & Patrizi, attorneys; John D. Borbi, on the brief).

The opinion of the court was delivered by

GUMMER, J.A.D.

In this automobile-accident case, defendant Carlos Jaime-Valdez appeals from an order denying defendant's motion to mold the jury's verdict or, in the alternative, for a new trial or remittitur. Because the trial court erred in not molding the verdict, we reverse the order and remand for proceedings consistent with this opinion.

I.

On December 16, 2019, plaintiff Keith Hacker filed a complaint in the Law Division seeking damages for injuries he allegedly had sustained in a motor-vehicle accident that took place on January 27, 2018. He named as defendants Michele Donato, whom he alleged was the owner of the vehicle that had collided with his vehicle; Jaime-Valdez, whom plaintiff alleged was acting as Donato's agent and operating her vehicle when it collided with plaintiff's car; and Progressive Insurance Company, which, according to

plaintiff, had insured him under an automobile insurance policy that provided underinsured-motorist coverage.[1]

Defendant answered the complaint and participated in discovery until May 14, 2021, when he filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. The parties did not include defendant's bankruptcy petition in their appellate appendices. Defendant represents in his merits brief that in his petition he listed plaintiff as a creditor and identified this action. Plaintiff does not dispute that representation.

On July 7, 2021, defendant moved in the Law Division for an order staying plaintiff's lawsuit. In a certification he submitted in support of the motion, defense counsel represented defendant had recently filed for bankruptcy in the United States Bankruptcy Court, District of New Jersey. Defense counsel stated defendant was seeking a stay of the Law Division matter, "pending the outcome of his bankruptcy proceeding."

Plaintiff submitted his counsel's letter and certification in opposition to the motion. In the letter, plaintiff's counsel represented to the court plaintiff

[1] Donato and Progressive did not participate in the trial and have not participated in this appeal. In a letter to this court, counsel for Progressive referenced a dismissal prior to trial, but the parties did not include a copy of that order in the appellate record. Given Donato's and Progressive's non-participation in this appeal, we refer to Jaime-Valdez as defendant for ease of reading.

would "immediately be filing a Motion to Lift the Automatic Stay to the Extent of Insurance Coverage in the U.S. Bankruptcy Court." In her certification, plaintiff's counsel stated "State Farm" and "GEICO" had each extended $100,000 in liability coverage and excess liability coverage, respectively, to defendant in connection with plaintiff's claim regarding the 2018 accident. Counsel represented plaintiff was opposing the stay motion because "[p]laintiff is seeking $200,000 to resolve this claim and nothing above the liability and excess coverage afforded [defendant;] therefore, resolution of the [s]tate civil matter will not involve property of the bankruptcy case." Plaintiff's counsel also stated in the certification that plaintiff had "filed an Offer to Take Judgment in the amount of the coverage available." Plaintiff had filed, on the same day he filed his opposition to the stay motion, an offer to take judgment against defendant in the amount of $200,000, defendant's available insurance policy limits. Plaintiff's counsel asked the court to "deny the application for a [s]tay as it applies to this [s]tate [c]ourt action and permit[] [p]laintiff to proceed with the litigation up to the limits of the available coverage."

After opposing defendant's stay motion in the Law Division, plaintiff moved in the bankruptcy court for relief from the automatic stay that court had entered. Notably, plaintiff did not file an adversary proceeding to except from

the bankruptcy case defendant's purported debt to him under 11 U.S.C. § 523(a)(9) as a debt "for . . . personal injury caused by the debtor's operation of a motor vehicle . . . if such operation was unlawful because the debtor was intoxicated . . . ." Plaintiff also did not move for a declaration defendant's purported debt to him was nondischargeable in bankruptcy, to limit his recovery in the Law Division case to nondischargeable debts, or to lift the automatic stay in the bankruptcy case to permit him to pursue any nondischargeable debt or any relief potentially available under Rule 4:58-2(a). Instead, he sought an order modifying the automatic stay expressly to permit him to pursue defendant's $200,000 in insurance coverage.

In a certification filed in support of plaintiff's motion, plaintiff's counsel stated "State Farm" had agreed to provide liability insurance coverage to defendant in the amount of $100,000 per person and "GEICO" had agreed to provide the same amount in excess liability coverage. Plaintiff's counsel advised the court about defendant's Law Division motion for a stay and plaintiff's offer to take judgment in the amount of $200,000. Plaintiff's counsel represented to the court plaintiff was moving "to remove this matter from the automatic [s]tay up to the liability and excess liability policy limits in effect at the time of the accident, which total $200,000." (Emphasis added). Plaintiff's counsel also represented: "Plaintiff will accept the policy limits to

resolve the matter[;] therefore, resolution of the [s]tate [c]ourt civil matter will not involve the property of the bankruptcy [sic]." Plaintiff's counsel asked the court to lift the automatic stay "as it applies to the underlying [s]tate [c]ourt action and permit [the] moving party to proceed with litigation currently pending in the Superior Court . . . to the limits of the available liability and excess liability insurance coverage." (Emphasis added). Plaintiff submitted with his motion a proposed form of order, granting the motion and vacating the automatic stay to permit plaintiff to "resume and prosecute" the Law Division action "to pursue [his] rights . . . [t]o the limits of . . . [d]efendant's available liability insurance coverage for the automobile accident of January 27, 2018 . . . ." (Emphasis added).

On August 17, 2021, the bankruptcy court conducted a hearing regarding plaintiff's motion and issued an order the next day granting the motion. Using the same language plaintiff had requested in his proposed form of order, the court granted plaintiff his requested relief from the automatic stay and permitted him to resume his prosecution of the Law Division action to pursue his rights "[t]o the limits of . . . [d]efendant's available liability insurance coverage for the automobile accident of January 27, 2018 . . . ." (Emphasis added). Plaintiff submitted a copy of that order to the Law Division in further

support of his opposition to defendant's stay motion. The trial court subsequently denied defendant's motion.[2]

The case proceeded to trial. On January 19, 2023, a jury found in plaintiff's favor and awarded him $1.6 million. Contrary to plaintiff's representations to the bankruptcy court and Law Division that plaintiff was seeking to pursue only the limits of defendant's insurance coverage, plaintiff's counsel in a January 25, 2022 letter advised defense counsel that plaintiff would hold defendant "directly responsible for any excess verdict and also seek a bad faith claim against [defendant's] respective insurance carriers immediately."

Defendant moved to mold the verdict to the $200,000 coverage limit or, in the alternative, for remittitur or a new trial. Regarding defendant's argument that the verdict should be molded to the coverage limit based on the bankruptcy court's order, the trial court stated:

> Isn't that the argument for the bankruptcy court? If you want to seek relief based upon a bankruptcy court order, don't you have to go to the bankruptcy court to suggest the bankruptcy trustee and the bankruptcy judge that this verdict somehow needs to be either discharged or molded according to the bankruptcy court order? I'm not going to dictate to the bankruptcy court the impact of what their order is on this, this

---

[2] The parties did not include a copy of the order denying that motion in their appellate appendices.

A- 2886-22

verdict. My obligation is to make the determination as to whether or not this jury returned a true and just verdict.

The court denied defendant's motion in a decision placed on the record on February 28, 2023. The court issued an order that day awarding plaintiff $1.6 million, plus prejudgment interest and counsel fees based on Rule 4:58-2(a) and defendant's non-acceptance of plaintiff's offer of judgment. Defendant appeals from that order.[3]

Defendant moved for reconsideration. At oral argument, the court "t[ook] the position that the bankruptcy court has jurisdiction over the issue of . . . the insurance coverage, and the impact of Rova Farms, and the impact of an intoxicated insured at the time of the injury."[4] The court apparently was referencing an argument plaintiff had made in the Law Division after the trial but not previously before in the bankruptcy court that plaintiff's claim was not dischargeable in bankruptcy because defendant allegedly was driving while intoxicated at the time of the accident. The court stated:

---

[3] Both parties submitted to this court motion papers, orders, or transcripts that post-date the February 28, 2023 order under appeal and that were not part of defendant's subsequent motion to supplement the record. Neither party objected to the inclusion of those documents in the appellate record. We accordingly treat them as a supplemental part of the record.

[4] Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474 (1974).

> If [the bankruptcy court] make[s] the call that the fact that [defendant] was intoxicated had no impact on limiting . . . the available remedy, and it's limited to the face amount of the policy coverage, that's for the bankruptcy court to decide. The . . . judgment here is valid unless limited by the bankruptcy court.

The court stayed the judgment to give defendant an opportunity to make an application in the bankruptcy court.

Defendant moved in the bankruptcy court to reopen his discharged Chapter 7 case and for an order "determining that the postpetition judgment obtained by creditor Keith Hacker is not enforceable beyond, or alternatively shall be molded to, the $200,000 policy limit of the debtor's automobile insurance." Plaintiff cross-moved for an order declaring the judgment was nondischargeable and not subject to bankruptcy protection.

In a decision placed on the record after oral argument on July 11, 2023, and in orders issued the next day, the bankruptcy court granted defendant's motion and denied plaintiff's cross-motion. In a crystal-clear decision,[5] the bankruptcy court rejected plaintiff's nondischargeability argument as a matter of law:

---

[5] In re Jaime, No. 21-14025-KCF (Bankr. D.N.J. Jul. 11, 2023) (transcript of decision); see also R. 1:36-3 (a court may cite to an unpublished case "to the extent required by res judicata, collateral estoppel, the single controversy doctrine, or any other similar principle of law . . . .").

Mr. Hacker's position is premised on a fundamental misunderstanding of the interplay between the automatic stay and the discharge provisions of the Bankruptcy Code. Section 362(a)(1) operates as a stay as to the continuation of any pre-petition judicial action against the debtor. Exceptions to the very broad sweep of the automatic stay are listed in 362(b) but the fact that a debt is not subject to discharge is not one of the enumerated exceptions; thus Mr. Hacker's statement that the stay motion could not have applied to nondischargeable debt is incorrect as a matter of law.

The bankruptcy court also rejected plaintiff's characterization of his motion before that court to lift the automatic stay:

Turning to the stay motion itself, Mr. Hacker's current position that he made clear that the stay motion only related to economic and not personal damages is a bit of revisionist history. The stay motion did nothing of the sort. In Paragraph 10 of [plaintiff's counsel's] certification in support of the motion it states, "[p]laintiff now moves to remove this matter from the automatic stay up to the liability and excess liability policy limit in effect at the time of the accident which totaled $200,000."

Plaintiff then filed an offer to take judgment in Superior Court for the sum of $200,000. Plaintiff will accept the policy limits to resolve the matter, therefore, resolution of the state court civil matter will not involve the property of the bankruptcy.

As much as Mr. Hacker might wish it were otherwise, the motion talks about resolving the entire matter for $200,000 and at no point mentions the relief being limited to the economic damages portion of the lawsuit. That is how this court understood it at the

time and that is how debtor's counsel was also entitled to understand it.

The bankruptcy court held plaintiff was judicially estopped from arguing he could collect more than the amount provided by defendant's insurance coverage.

> Judicial estoppel applies to preclude a party from assuming an inconsistent position with one court after he's been successful with it in another, and that's from <u>Oneida Motor Freight, Inc. v. United [Jersey] Bank</u>, 848 F.2d 414 [(3d Cir. 1988)]. That is what is at play here. Mr. Hacker represented to this court that he is only seeking to continue the state court litigation up to the amount of the insurance and this court accepted that representation and granted him stay relief because of it. Mr. Hacker cannot now go to the state court and argue the inconsistent position that he wants the insurance money and to collect personally from the debtor.

> The Court finds that outcome here is dictated by <u>Fleck v. KDI Sylvan Pools[, Inc.]</u>, 981 [F.]2d 107 [(3d Cir. 1992)]. In <u>Fleck</u> the Third Circuit concluded that, and I'll quote here,

>> The bankruptcy court's order makes clear that the court lifted the automatic stay because the Flecks represented that any judgment will be limited to the insurance proceeds. A party who petitions a bankruptcy court to lift [such] stay by agreeing to limit their recovery against the protected debtor cannot later collect (indiscernible) in its entirety on a judgment that exceeds the agreed-upon limit.

11

[Id. at 122 (formatting modified).]

So, the motion to reopen will be granted and the court finds that based on judicial estoppel that the state court plaintiff may not collect more than $200,000.

The bankruptcy court expressly addressed and rejected plaintiff's cross-motion and explained the options plaintiff had in the bankruptcy matter.

This ruling renders the cross-motion moot, but the court will note that the cross-motion's reliance on [11 U.S.C. §] 727 does not change the outcome.[6] Section 727 does not address this type of debt, but Section 523(a)(9) does.

And Mr. Hacker is correct that it makes a debt stemming from personal injury caused by a debtor's operation of a motor vehicle when intoxicated nondischargeable. Had he wanted to, Mr. Hacker could have sought stay relief to pursue the full amount of whatever judgment might have been entered in the state court. Alternatively, he could have waited until the bankruptcy was closed and then continued with the trial and try to collect on his nondischargeable debt but that's not what he did.

What he apparently did, and many state court plaintiffs do, was decide not to pursue a potentially judgment-proof debtor but instead limit himself to the amount of the insurance. Once this court entered the order that Mr. Hacker requested which limited recovery to the insurance proceeds, Mr. Hacker lost the right to pursue the debtor personally. . . .

---

6  Section 727 of the Bankruptcy Code requires a court to grant a debtor a discharge unless certain conditions, none of which apply here, exist. See 11 U.S.C. § 727.

In its order granting defendant's motion, the bankruptcy court ordered that the judgment was "unenforceable beyond the $200,000 [p]olicy [l]imit" and was "molded to the $200,000 [p]olicy [l]imit." The bankruptcy court directed that its order would "take immediate effect." In a September 11, 2023 order, the bankruptcy court denied plaintiff's subsequent reconsideration motion.

Following entry of the bankruptcy court's July 12, 2023 orders, defendant again moved in the Law Division for an order molding the judgment to $200,000. In a September 22, 2023 order, the court acknowledged the bankruptcy court's July 2023 orders but nevertheless denied defendant's motion.

Defendant moved for reconsideration of that order. After hearing argument on December 1, 2023, the court held the bankruptcy court had "removed" from defendant's bankruptcy case plaintiff's claim "to the extent of the insurance policy and discharged the balance"; the bankruptcy court had "discharged [defendant], personally, in any amount above [$]200,000"; defendant was "entitled to have the bankruptcy court protection afford[ed to] him against any balance of the judgment in excess of [$]200,000"; and it would "allow[] the bankruptcy court's authority to discharge [defendant's] obligation to pay it." Despite those holdings, the court declined to mold the

judgment because it thought that doing so would be "disingenuous." The court indicated defendant, after paying plaintiff the $200,000 in insurance proceeds, should "file a subsequent application indicating . . . the judgment against [defendant] should be discharged for any amount above and beyond [$]200,000 . . . pursuant to the bankruptcy court's ruling." On January 8, 2024, the court entered an order denying defendant's reconsideration motion.

In July 2024, defendant moved to deposit funds in court and to discharge the remainder of the judgment against him. At oral argument on August 16, 2024, defense counsel explained by filing that motion, defendant simply was following the "instructions" the court had issued during the December 1, 2023 proceeding to file a "subsequent application" for the discharge of the judgment above the $200,000 coverage amount pursuant to the bankruptcy court's ruling. After hearing argument, the court held, pursuant to the bankruptcy court's order, defendant "personally has no further liability in this action, that his liability was limited to the insurance policy . . . ." and that it would allow defendant to deposit $200,000 in court.[7]

---

[7] We granted defendant's unopposed motion to supplement the record with the transcript from the August 16, 2024 proceedings. Pursuant to our order, defendant submitted a copy of that transcript. The parties did not submit copies of the motion papers or order.

On appeal, defendant contends the court erred in denying his motion to mold the verdict because plaintiff was judicially estopped from obtaining a money judgment in excess of the $200,000 automobile insurance coverage. In the alternative, defendant maintains the $1.6 million dollar verdict entered in plaintiff's favor was a miscarriage of justice necessitating a new trial or remittitur. He also argues a new trial is required because at trial plaintiff's counsel (1) mischaracterized plaintiff's injuries and the testimony of defendant's expert witness; (2) inappropriately asked the jury to "impose responsibility" on defendant during summation; and (3) improperly elicited testimony that defendant had fled the scene of the accident.

## II.

"Judicial estoppel is an equitable doctrine precluding a party from asserting a position in a case that contradicts or is inconsistent with a position previously asserted by the party in the case or a related legal proceeding." Tamburelli Props. Ass'n v. Borough of Cresskill, 308 N.J. Super. 326, 335 (App. Div. 1998). The doctrine "protect[s] the integrity of the judicial system" and "prevent[s] litigants from 'playing fast and loose with the courts.'" Ibid. (quoting Scarano v. Cent. R.R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953)). It precludes a party that "successfully assert[ed] a position in a prior legal proceeding" from "assert[ing] a contrary position in subsequent litigation

15

arising out of the same events." Adams v. Yang, 475 N.J. Super. 1, 8 (App. Div. 2023) (quoting Kress v. LaVilla, 335 N.J. Super. 400, 412 (App. Div. 2000)). "The principle is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 607 (App. Div. 2000) (quoting Eagle Found, Inc. v. Dole, 813 F.2d 798, 810 (7th Cir. 1987)). "One may not assert a particular position in order to serve one purpose, then assert a wholly contrary position to serve another." Newell v. Hudson, 376 N.J. Super. 29, 38 (App. Div. 2005) (quoting Owen v. Knop, 853 S.W.2d 638, 643 (Tex. App. 1993)).

For judicial estoppel to apply, the party seeking to estop another party must show the other party "convinced [a] court to accept its position . . . ." Adams, 475 N.J. Super. at 8 (quoting Kimball, 334 N.J. Super. at 606-07). "If a court has based a final decision, even in part, on a party's assertion, that same party is thereafter precluded from asserting a contradictory position." Cummings v. Bahr, 295 N.J. Super. 374, 387-88 (App. Div. 1996). Nevertheless, because it is an "'extraordinary remedy,'" judicial estoppel "should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice'" if left unaddressed. Kimball, 334 N.J. Super. at 608 (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,

81 F.3d 355, 365 (3d Cir. 1996)). Such a miscarriage of justice is presented here.

After the bankruptcy court automatically stayed the Law Division case when defendant filed his bankruptcy petition, plaintiff represented to both the Law Division and the bankruptcy court that he was pursuing only $200,000, the funds provided by defendant's insurance coverage. He made that representation in his opposition to defendant's Law Division stay motion and in his motion in the bankruptcy court for relief from the automatic stay. The bankruptcy court granted plaintiff's motion based on plaintiff's representation; it even used in its order the language plaintiff had requested in his proposed form of order, which enabled him to resume his prosecution of the Law Division action to pursue his rights "[t]o the limits of . . . [d]efendant's available liability insurance coverage for the automobile accident of January 27, 2018 . . . ." Plaintiff then submitted that order to the Law Division in further support of his opposition to defendant's stay motion.

What was the result of the representation plaintiff made in both courts that he was pursuing only the $200,000 in insurance coverage? He succeeded in obtaining an order from the bankruptcy court granting his motion and an order from the Law Division denying defendant's motion.

A- 2886-22

With those orders, plaintiff was able to proceed to trial. And after the jury had rendered its verdict, plaintiff changed his position and asserted he was pursuing not only the insurance proceeds but the full amount of the verdict. But having represented to both courts he was pursuing a judgment limited to the amount of the insurance coverage and having received relief based on that representation, plaintiff was judicially estopped from changing his position. See Fleck, 981 F.2d at 121-22 (in their motion to lift the automatic stay, the plaintiffs had represented to the bankruptcy court any recovery in their lawsuit would "be limited solely to the proceeds of the [defendant's] applicable insurance"; the Third Circuit held the plaintiffs' "representation to the bankruptcy court judicially estop[ped] them" in their lawsuit, finding "[a] party who petitions a bankruptcy court to lift a stay by agreeing to limit the recovery against the protected debtor cannot later collect in its entirety on a judgment that exceeds the agreed upon limit.").

And there is another reason why the court should have molded the verdict and entered a judgment for $200,000: the court lacked authority to act contrary to the bankruptcy court's order by entering a judgment exceeding that amount. An automatic bankruptcy stay "prevent[s] the commencement or continuation of any judicial . . . proceeding against the debtor." Trooper Ink Co. v. Warren, 279 N.J. Super. 257, 262 (App. Div. 1995) (quoting Browning

18

v. Navarro, 743 F.2d 1069, 1083 (5th Cir. 1984)). Section 362(d) of the Bankruptcy Code authorizes the bankruptcy court "to grant relief from the stay by terminating, annulling, modifying or conditioning the stay." Id. at 262-63 (citing 11 U.S.C. § 362(d)). The bankruptcy court, thus, "has the flexibility and the discretion to fashion the relief to the circumstances of the matter." Id. at 263.

Relief from the automatic stay allows a creditor to litigate his or her substantive claims within the bounds of the bankruptcy court's expressly-granted permission without violating the automatic stay. The authority to grant that relief and modify the automatic stay belongs solely to the bankruptcy court. Minelli v. Harrah's Resort Atl. City, 463 N.J. Super. 539, 547 (App. Div. 2020) (citing U.S. Bank Nat'l Ass'n v. Crawford, 219 A.3d 744, 758 (Conn. 2019)). The court acted outside its authority when, despite the automatic stay and the bankruptcy court's limited order modifying the stay to permit pursuit of plaintiff's claim only as to the amount of the insurance proceeds, it denied defendant's motion to mold the verdict and awarded a judgment far in excess of that amount.[8]

---

[8] As noted above, in the February 28, 2023 order denying defendant's motion to mold the verdict, the court ordered that plaintiff was entitled to the full amount of the jury award as well as relief pursuant to Rule 4:58-2(a). In both

In the bankruptcy court, plaintiff could have filed an adversary proceeding to except from the bankruptcy proceeding defendant's purported debt to him under 11 U.S.C. § 523(a)(9). He also could have moved to limit his recovery to non-dischargeable debts. He didn't do either of those things. Instead, he moved for a limited modification of the automatic stay that would permit him to pursue defendant's $200,000 in insurance coverage. And that is the exact relief the bankruptcy court granted him. Moreover, the judgment entered in favor of plaintiff beyond the $200,000 in available insurance coverage was void, 11 U.S.C. § 524(a)(1), and any effort to collect and recover the verdict beyond $200,000 was permanently enjoined, 11 U.S.C. § 524(a)(2).[9]

In the February 28, 2023 order, the trial court erred in denying defendant's motion to mold the verdict to the $200,000 coverage limit. The bankruptcy court clearly had granted plaintiff relief from the automatic stay

_____

respects, the court erroneously exceeded its authority and the limited modification of the stay order granted by the bankruptcy court.

[9] 11 U.S.C. § 524(a)(1) provides that the bankruptcy discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . ." In turn, 11 U.S.C. § 524(a)(2) provides that the bankruptcy discharge "operates as an injunction against the . . . continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."

only, as plaintiff had requested, to pursue his rights "[t]o the limits of . . . [d]efendant's available liability insurance coverage." Any doubt the court may have had about the meaning of that language was eliminated by the bankruptcy court's July 2023 decision and orders. But the court erred again by denying defendant's subsequent motion to mold the verdict in its September 22, 2023 order and defendant's reconsideration motion in its January 8, 2024 order.

In sum, we conclude the court erred in denying defendant's motion to mold the verdict to the $200,000 coverage limit. We reverse the February 28, 2023 order and remand the case for entry of an order molding the verdict to the $200,000 insurance-coverage limit. Because we reverse the order based on the court's failure to mold the verdict, we do not reach defendant's alternative arguments.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

21                                                                              A-2886-22